UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| CLIFFORD MAPLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.1:09-cv-01304-SEB-DML |
| | ) | |
| KNAUF INSULATION GMBH, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Granting in Part and Denying in Part
Knuaf's Motion For Summary Judgment**

Clifford Maple was fired by his employer, Knauf Insulation GmbH ("Knauf"), ostensibly for smoking in violation of the company's rules. Believing he was instead fired because of his age (he was 63 at the time of his termination) and his sex (male), Mr. Maple filed suit against Knauf, claiming violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. ' 621, et seq., and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. ' 2000e, et seq.

Knauf seeks resolution of this action through the entry of summary judgment. For the reasons explained in this Entry, Knauf's motion for summary judgment is **granted in part and denied in part.**

**I.   Summary Judgment Standard**

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party has met the standard of Rule 56, summary judgment is mandatory. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

"In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney,* 526 F.3d at 1104 (internal citations omitted). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

As a preliminary matter, we address a few of the arguments raised in Knauf's reply brief. First, Mr. Maple's statements made under the penalty of perjury are sufficient to create facts in dispute regarding the circumstances surrounding his termination. See, for example, deposition transcript (dkt 39-4, 39-5, and 39-6), and statements (dkts 43-63, 43-68, 43-81). The Seventh Circuit has held "that uncorroborated, self-serving testimony, '[i]f based on personal knowledge or firsthand experience,' may prevent summary judgment against the non-moving party, as 'such testimony can be evidence of disputed material facts.'" *Montgomery v. American Airlines, Inc.,* 626 F.3d 382, 389 (7th Cir. 2010) (quoting *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)). Given the sufficiency of Mr. Maple's testimony, the court finds it unnecessary to give Mr. Maple the opportunity to cure the supposed defects raised by Knauf[1] related to other documents in the record which support of Mr. Maple's version of the facts. See *Federal Rules of Civil Procedure* 56(e)("[i]f a party fails to properly support an assertion of fact . . . the court may: (1) give an opportunity to properly support or address the fact.").

Second, Knauf's contention that Mr. Maple admitted to smoking in a warehouse during his deposition is rejected as frivolous. Upon review of the deposition transcript it is clear that Mr. Maple denied that the Old Receiving Department was a warehouse. Whether Mr. Maple was properly terminated for smoking in a warehouse area or whether he should have been subjected to progressive discipline for smoking in a non-warehouse is a material fact in dispute.

In discussing a handwritten map of Knauf's facility (see Exhibit 6, dkt 39-6) the following exchange occurred:

> Q:  All right. And you – you've indicated there's a driveway that was between what you've written down as the old receiving and the – what you've characterized as the warehouse?

---

[1] For example, Knauf objects to the admissibility and sufficiency of affidavits of Knauf employees, the declarations of Walty, Mann and Runshe, and the Personal Action Forms of Brown and Tolnay.

> A: Right.

Mr. Maple's Deposition at p. 20 (dkt 39-4). This discussion clearly reflects that Mr. Maple describes the area he was caught smoking in as the Old Receiving Department, a non-warehouse area. Knauf describes it as the Old Receiving Warehouse, a warehouse area. Later, Maple was asked about the Personal Action Form given to him after he was caught smoking. (See dkt 43-6 Maple's Personal Action Form).

> Q. Okay. If you look in the body of the remarks, it says, "On 7-31-08, you were discovered in the old receiving warehouse smoking, which is a violation of Section No. 21 under the rules of conduct in the employee handbook and is just cause for your immediate termination."
>
> . . .
>
> Q. Okay. And did you, in fact, acknowledge that you had been smoking in the old receiving warehouse where you indicated on the map, which is Exhibit 6?
>
> A. Yes, I did, because I was telling the truth.

Mr. Maple's Deposition at p. 103-104 of Dkt. 39-5. This admission can only be understood to pertain to the fact that Maple admits smoking in the area identified as "old receiving" on the map.[2] Mr. Maple was not admitting that the Old Receiving Department is a warehouse area. This was quite evident to counsel at the time, given the following question:

> Q: All right. Now, you had told the union all of the facts that you told the company about the fact that you didn't believe you were in a warehouse, right, you told the union that?
>
> A: Correct.

Mr. Maple's Deposition at p. 129 (dkt 39-5). Having addressed these issues we now turn to the material facts not in dispute.

---

[2] At the heart of this dispute is whether a building described by Mr. Maple as the "Old Receiving Department" is, as Knauf argues, a "warehouse." The following epigram attributed to Abraham Lincoln is on point: "How many legs does a dog have if you call the tail a leg? Four. Calling a tail a leg doesn't make it a leg."

## II. Material Facts

The court finds the following facts are not genuinely in dispute. These facts shall be treated as established in this action pursuant to *Federal Rules of Civil Procedure* 56(g).

1. Knauf is an insulation manufacturer producing a wide range of insulation products. Mr. Maple was employed at Knauf=s Shelbyville, Indiana facility.

2. Mr. Maple was hired by Knauf on May 10, 1991, at the age of 46 at its Shelbyville, Indiana facility. Mr. Maple initially was hired to work in Knauf=s labor pool, which is an entry level classification, but later bid on and filled higher-rated jobs.

3. While employed with Knauf, Mr. Maple was a member of the Glass, Molders, Pottery, Plastics, and Allied Workers Union, Local No. 32 (AUnion@). As a member of the Union, Mr. Maple was subject to the terms of the Collective Bargaining Agreement (ACBA@) in effect during his employment with Knauf. Mr. Maple had knowledge of the grievance procedure available to him and all Knauf employees.

4. In April 2006, the Shelbyville Common Council passed Shelbyville Ordinance 06-2564 (AOrdinance@), which generally prohibits smoking in public areas and places of employment. See CITY OF SHELBYVILLE, CODE OF ORDINANCES, ' 99.01,et seq. (2010). The Ordinance was codified in the City of Shelbyville, Indiana Code of Ordinances, Title IX, Chapter 99. *Id.* It became effective August 1, 2006, and under the Ordinance, an employer is forbidden from permitting smoking in any Aenclosed areas@ on its premises. *Id.* Knauf constitutes an Aemployer@ under the statute and must comply with its provisions. *Id.*

5. Even prior to the city ordinance, Knauf prohibited smoking on-site except for specifically designated areas of the plant. The CBA permits Knauf to implement Areasonable work rules@ so Knauf created penalties for smoking in different areas of the facility which result in different levels of discipline. Specifically, Knauf made a distinction between smoking in Awarehouse areas@ versus Anon-warehouse areas.@ This distinction remains in effect today.

6. Knauf employees caught smoking in non-warehouse areas are subject to a four-step, progressive disciplinary procedure. Under this procedure, an employee receives up to three warnings; the fourth offense results in a seven-day suspension pending termination.

7. In contrast, Knauf has a strict policy of immediate termination for smoking in warehouse areas. This distinction is based on a business and safety principle; that warehouse areas containing high concentrations of flammable materials are much more prone to fires than non-warehouse areas. Furthermore, a warehouse fire has the potential to cripple Knauf=s operations financially because these structures house Knauf=s entire stock of finished product.

8. On July 31, 2008, Mr. Maple was caught smoking. Mr. Maple was issued a seven day working suspension with intent to discharge.

9. Knauf told Mr. Maple that he was terminated for smoking in a warehouse area.

10. Mr. Maple was the age of 63 at the time of his termination.

### III. Discussion

Mr. Maple filed this action alleging that Knauf fired him because of his age[3] and/or sex[4].

To survive a summary judgment motion on age and sex discrimination claims under the ADEA and Title VII, a plaintiff must present either direct or indirect evidence of discriminatory intent. *Naik v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010) (citing *La Montagne v. American Convenience Products, Inc.* 750 F.2d 1405, 1409 (7th Cir. 1984)). Mr. Maple apparently seeks to prove discriminatory intent through the indirect method, which involves establishing a *prima facie* case under the familiar *McDonnell Douglas* formula. *See Egonmwan v. Cook County Sheriff's Department*, 602 F.3d 845, 850 (7th Cir. 2010). Accordingly, he must show that:

(1) he is a member of the protected class;

(2) he was performing well enough to meet his employer's legitimate expectations;

(3) he suffered an adverse employment action; and

(4) similarly situated employees not in his protected class were treated more favorably.

Naik, 627 F.3d at 600 (citing *Hildebrandt v. Illinois Department of Natural Resources*, 347 F.3d 1014, 1030 (7th Cir. 2003)). If Mr. Maple establishes all four elements, the burden

---

[3] The ADEA makes it illegal for an employer Ato fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.@ 29 U.S.C. ' 623(a)(1). AThe discrimination prohibited by the ADEA is discrimination Abecause of [an] individual's age,@ 29 U.S.C. ' 623(a)(1), though the prohibition is Alimited to individuals who are at least 40 years of age,@ ' 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older.@ *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312 (1996).

[4] Title VII of the Civil Rights Act of 1964, makes it unlawful Afor an employer-(1) to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin.@ 42 U.S.C. ' 2000e-2(a).

shifts to Knauf to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If Knauf meets its burden, Mr. Maple must demonstrate that the reasons offered were pretextual. *Egonmwan*, 602 F.3d at 850.

There is no dispute that Mr. Maple is a member of a protected class (he was a 63-year-old male at the time of his termination) or that he suffered an adverse employment action. Only the second and fourth elements are contested here.

### 1. Employer=s Expectations

Knauf argues that Mr. Maple is unable to establish a *prima facie* case of discrimination (either based on age or sex) with regard to his termination because he cannot establish that he was meeting Knauf=s expectations of employees refraining from smoking in a warehouse--areas that contain thousands of tons of flammable insulation. Indeed, it is undisputed that Mr. Maple knew smoking strictly was prohibited in warehouse areas and that Knauf maintained policies mandating immediate termination for any employee caught smoking in a warehouse area. Mr. Maple, however, has presented evidence that he was not smoking inside a warehouse; specifically, he states that he was smoking in the Old Receiving Department, formerly known as the Receiving Department, which is not a warehouse and has Avery little product in that area.@ Further, the product is flame resistant. In short, there is a genuine issue of material fact regarding whether Mr. Maple violated the work place policy prohibiting smoking in a warehouse area in contrast to a non-warehouse area.

### 2. Similarly Situated Employees

Knauf argues that Mr. Maple=s claims of discrimination fail because he can point to no similarly-situated comparator outside of his protected class who was treated more favorably. To establish that an employee is similarly situated, Mr. Maple must point to an individual Adirectly comparable to [her] in all material respects.@ *Peele*, 288 F.3d at 330 (citation omitted); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (same); *Kriescher v. Fox Hills Golf Resort*, 384 F.3d 912, 916 (7th Cir. 2004) (The plaintff Amust show that [he] is similarly situated to other employees with respect to performance, qualifications, and conduct@). In addition, Mr. Maple must establish that people outside the protected class Aengaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer=s treatment of them.@ *Peele*, 288 F.3d at 330 (citation omitted).

Knauf argues that its rule mandating immediate termination for smoking in the warehouse is uniformly applied to all employees. But again, there is a question of fact regarding whether or not Mr. Maple was smoking in a warehouse area. In Mr. Maple=s deposition, he referenced Knauf employees Derek Tolnay, Sharon Brown, Tim Burton, and David Burton as being examples of similarly situated employees who engaged in similar conduct and were treated more favorably. In regards to Derek Tolnay (36-years old) and Sharon Brown (49-years old), Maple argues they are Knauf employees who were caught smoking in an area similar to the Old Receiving Department, but not

terminated. Knauf argues that Tolnay and Brown were in a non-warehouse area when they were caught smoking. Tim and David Burton both were terminated for smoking in a warehouse area but subsequently accepted reinstatement offers negotiated for them by the Union. Knauf argues that the offers accepted by the Burtons paralleled the ones rejected by Mr. Maple. Mr. Maple however, disagrees, explaining that the offers were not similar because he was out of work for much longer than the Burtons (four-months versus 3-weeks), thus he was subjected to a great financial burden. All of the proposed comparators are Asubstantially younger@ than Mr. Maple. See *O'Connor,* 517 U.S. at 313. These facts are sufficient to create a material fact in dispute as to the ADEA claim. Again, whether the area Derek Tolnay and Sharon Brown were caught smoking in was a warehouse area as understood by company policy and whether the Burtons who were caught smoking in a warehouse area were treated more favorably than Mr. Maple is a material fact in dispute.

On the other hand, Mr. Maple=s designation of the three male comparators fundamentally negate Mr. Maple=s allegation of sex discrimination and Knauf is entitled to summary judgment on Mr. Maple=s sex discrimination claim. No reasonable jury could find that sex was a motivating factor in Mr. Maple=s termination under these circumstances.

### 3. Pretext

Mr. Maple has established a *prima facie* case as to his claim of age discrimination. Under the *McDonnell-Douglas* paradigm, this leads to consideration of whether Knauf has shown a legitimate nondiscriminatory reason for its termination of Mr. Maple's employment and whether, if so, Mr. Maple has shown a genuine issue for trial as to whether that reason was a pretext.

Knauf argues that Mr. Maple cannot demonstrate that the legitimate, nondiscriminatory reason articulated by Knauf for his termination (smoking in a warehouse) is a pretext for unlawful discrimination. To demonstrate pretext, Mr. Maple must show that the Company is lying in order to cover up a discriminatory motive. *See Abioyev. Sundstrand Corp.,*164 F.3d 364, 368 (7th Cir. 1998). AThe pretext analysis seeks to uncover the true intent of the defendant, not the belief of the plaintiff.@ *Sanchez v. Henderson*, 188F.3d 740, 746 (7th Cir. 1999); *see also Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006) (since pretext is a deliberate falsehood, the only concern in reviewing an employer=s reasons for termination is the honesty of the employer=s belief). Thus, Mr. Maple cannot merely rely on his own impression as to whether Knauf=s proffered reasons for its actions were correct or desirable, as the singular question to be considered is whether Knauf honestly believed in the reasons offered for its decisions. *See Abioye,* 164 F.3d at 369. Mr. Maple has presented facts from which a jury could conclude that he was not terminated for smoking in a warehouse area, but because of his age. Specifically, he argues that Knauf could not have believed that the Old Receiving Department was a warehouse area and that the area where Tolnay and Brown were caught smoking was not, given the location and use of the Old Receiving Department and the purpose of the warehouse area designation.

## IV. Conclusion

In summary, a reasonable jury could find that but for his age, Mr. Maple would not have been terminated, but instead would have been subject to progressive discipline for smoking in a non-warehouse area. *See Gross v. FBL Fin. Serv., Inc.*, 129 S.Ct. 2343, 2352 (2009); *see also, Martino,* 574 F.3d at 455. Accordingly, Mr. Maple's ADEA claim survives summary judgment. The record, however, cannot sustain a claim of sex discrimination. There is simply no evidence in support of such a claim and thus, Knauf is entitled to summary judgment on Mr. Maple's sex discrimination claim.

Formalistically, therefore, Knauf's motion for summary judgment [37] is **denied in part and granted in part.** The AEDA claim survives. No partial final judgment shall issue at this time as to the claim(s) resolved in this Entry.

**IT IS SO ORDERED.**

Date: 09/15/2011

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Clifford Maple
6228 W. CO. RD. 250 N.
Connersville, IN 47331

David J. Pryzbylski
BARNES & THORNBURG LLP
dpryzbylski@btlaw.com

Kenneth J. Yerkes
BARNES & THORNBURG LLP
ken.yerkes@btlaw.com